**SMITH COUNTY, Tennessee, Plaintiff/Appellee,**

v.

**Patrick H. EATHERLY, et ux., Mary Frances Eatherly, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 26, 1991.

Permission to Appeal Denied by Supreme Court Dec. 2, 1991.

---

Jacky O. Bellar, Carthage, for plaintiff/appellee.

James L. Bass, Bass & Bass, Carthage, for defendants/appellants.

## OPINION

KOCH, Judge.

This appeal arises from Smith County's condemnation of property needed for a new landfill. The property owners requested a jury trial on the issue of damages, and a jury in the Circuit Court for Smith County

awarded them $98,600. The property owners have appealed, taking issue with the evidentiary foundation of the jury's verdict and with the trial court's exclusion of portions of their proof concerning the value of the property.[1] We affirm the judgment.

## I.

In the late 1980's, the Smith County Commissioners determined that the county was in need of a new landfill and appointed a special committee to search for possible landfill sites. The committee eventually recommended a 42.71–acre tract of undeveloped farmland owned by Patrick and Mary Frances Eatherly. The property was located less than a mile from the Carthage city limits and was considered suitable for a landfill because it contained both a clay liner and a considerable amount of excess dirt.

In October, 1988, the county commissioners voted to condemn the Eatherlys' property and, on the advice of their appraisers, determined that just compensation for the property was $118,000. The county attorney filed the condemnation petition in November, 1988 and made a formal tender of $118,000 into court. The Eatherlys did not contest the county's right to condemn the property and entered into an agreement allowing the county immediate possession of the property. They did not, however, agree to accept $118,000 for the property and demanded a jury trial on the question of damages.

The proof at trial concerning the fair market value of the property was in conflict. Mr. Eatherly testified that the property was worth $4,100 per acre or $175,111 and presented three other expert witnesses who testified that the property was worth from $130,000 to $170,000. The county, on the other hand, produced three expert witnesses who testified that the property's fair market value was between $75,000 and $80,000. The jury returned a verdict for the Eatherlys in the amount of $98,600.

## II.

■ Initially, the Eatherlys take issue with the trial court's refusal to permit them to qualify two county officials as experts in order to elicit their opinions concerning the value of the property. The trial court had broad discretion concerning the qualification of expert witnesses and their testimony, *Shelby County v. Barden*, 527 S.W.2d 124, 131 (Tenn.1975); *State ex rel. Comm'r, Dept. of Transp. v. Veglio*, 786 S.W.2d 944, 947–48 (Tenn.Ct.App.1989). *State ex rel. Dept. of Transp. v. Brevard*, 545 S.W.2d 431, 436–37 (Tenn.Ct.App.1976), and did not abuse its discretion in this case.

The Eatherlys attempted to call Mr. Leslie Proffitt, a county commissioner and chairman of the solid waste disposal committee, and Mr. C.E. Hackett, the county executive, to give their expert opinions concerning the value of the property. However, both men equivocated concerning their ability to give an expert opinion about the property's value. Mr. Proffitt testified that he was "not really sure" he could give an opinion concerning the value of the property being condemned. Similarly, Mr. Hackett testified that he could not "necessarily" give an opinion concerning the value of property in Smith County in general or the property being condemned in particular.

■ A trial court may properly decline to qualify a witness as a valuation expert when the witness concedes a lack of expertise in the field of real estate values. *Brookside Mills, Inc. v. Moulton*, 55 Tenn. App. 643, 653–54, 404 S.W.2d 258, 264 (1965). This is precisely what happened in this case. Both Mr. Hackett and Mr. Proffitt disclaimed any expertise concerning the valuation of real property. Accordingly the trial court did not err by ruling that they could not give an expert opinion concerning the fair market value of the property being condemned.

## III.

■ The Eatherlys also insist that the trial court erred by refusing to permit

---

**1.** The appellants' brief does not contain the statement of the issues presented for review required by Tenn.R.App.P. 27(a)(4). Instead, it discusses five "assignments of error." Assignments of error were abolished twelve years ago. *See* Tenn.R.App.P. 3(h).

them to introduce into evidence the minutes of the October, 1988 meeting when the county commission decided to condemn the property. They explained at trial that this evidence was relevant because it "involves the Constitutional right of the defendants to have just compensation for their property."

The minutes, which were tendered in an offer of proof, reveal that twenty-two of the twenty-five county commissioners conducted a lengthy meeting on October 31, 1988, for the purpose of selecting a new landfill site. After considering several possible locations, they selected the Eatherlys' property by a 15 to 7 vote. They were informed that Mr. Eatherly had purchased the property for $59,000 and that he was willing to sell it to the county for $175,070. They were also informed that the two local realtors retained by the county had appraised the property for $118,000 and $123,650. Even though they were concerned about the cost of the land, the county commission eventually directed the county attorney to make a formal tender of $118,000.

The two realtors retained by the county were called at trial and gave opinions concerning the value of the property that were lower than the appraisals they had given to the county commission in December, 1988. The Eatherlys' attorney cross-examined one of the realtors concerning the difference between his two appraisals but never brought up the issue with the second realtor and never sought to put on rebuttal proof concerning the difference between their appraisals.

■ Evidence concerning the amount the county decided to pay into court is irrelevant in a condemnation proceeding. *Clinton Livestock Auction Co. v. City of Knoxville,* 52 Tenn.App. 614, 617–18, 376 S.W.2d 743, 744–45 (1963); Tenn.Code Ann. § 29–17–701(b) (1980).[2] Trial courts have wide latitude to control the admission of valuation evidence in condemnation proceedings. *State v. Rascoe,* 181 Tenn. 43,

56, 178 S.W.2d 392, 397 (1944). We find no basis for disagreeing with the trial court's conclusion that the county commission's deliberations concerning the details of the condemnation of the property were not relevant.

## IV.

■ As a final matter, the Eatherlys contend that the jury's verdict is contrary to the weight of the evidence and is so low that it indicates the jury's passion, prejudice, or caprice. We disagree.

Appellate courts do not re-weigh the evidence when a party challenges the evidentiary support for a verdict. We take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, and allow all reasonable inferences to uphold the jury's verdict, *Haga v. Blanc & West Lumber Co., Inc.,* 666 S.W.2d 61, 63 (Tenn.1984); *Crabtree Masonry Co., Inc. v. C. & R. Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn.1978), and will only set aside a jury's verdict when there is no material evidence to support it. *See* Tenn. R.App.P. 13(d).

■ This record contains material evidence supporting the jury's verdict awarding the Eatherlys $98,600 for their property. The property was not within the Carthage city limits and was not adjacent to the interstate highway or other public roads. It did not have public water or sewer lines and was only accessible by a gravel road. The opinions concerning the property's fair market value ranged from $1,750 per acre to $4,100 per acre. Several witnesses testified, however, that they knew of no property in Smith County that had sold for $4,100 per acre and that the highest price they had heard of was $3,100 per acre. The jury valued the property at approximately $2,300 per acre, a price well within the range of testimony. Accordingly, we find that the jury's verdict was supported by the evidence.

---

**2.** Tenn.Code Ann. § 29–17–701(b) provides, in part, that "[s]uch payment to the property owner or into court shall in nowise limit or fix the amount to be allowed under subsequent proceedings in said case."

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings are required. We also tax the costs of this appeal, jointly and severally, against Patrick H. Eatherly and Mary Frances Eatherly and their surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.